UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EDMUND ZAGORSKI,                    )
                                    )
        Petitioner,                 )
                                    )
                                    )        Case No. 3:99-1193
v.                                  )        Judge Trauger
                                    )
                                    )
RICKY BELL, WARDEN,                 )
                                    )
        Respondent.                 )

<u>ORDER UPON REMAND</u>

This action was remanded to the district court on July 17, 2006 "for an appropriate analysis

of whether a COA [certificate of appealability] should issue for any claims raised in Zagorski's

petition." (DE # 199, p. 2) The court liberally construes the Order of Remand to require an

individualized assessment of all of Zagorski's claims, those that were reached on the merits as well

as those that were determined on procedural grounds.

I. ANALYSIS

When the district court denies a ground for *habeas corpus* relief on the merits, a COA "may

issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right,"

28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). Where the district court denies *habeas*

*corpus* relief on procedural grounds without reaching the underlying constitutional claim, a COA

may issue only if the court finds that "jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right" <u>and</u> that "jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." *Id*.

With respect to claims that are dismissed on procedural grounds, the Supreme Court noted

further that:

> Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments. The recognition that the 'Court will not pass upon a constitutional question although properly presented by the record, if there is also some other ground upon which the case may be disposed of' . . . allows and encourages the court to first resolve procedural issues.

*Id*. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288 (1936)). If the district court determines that an issue is procedurally defaulted, then there is no requirement to address the issue on the merits. *Id*.

The individualized analysis that follows mirrors the district court's March 31, 2006 memorandum and opinion (DE # 183).

### A. Admissibility of Zagorski's Incriminating Statements (DE # 183, pp. 13-16)[1]

Zagorski alleged that the trial court erred in admitting into evidence statements that he made to law enforcement officials on June 1, July 27, and August 1, 1983. (DE # 16, ¶ III.6, pp. 5-12; DE # 104, ¶ II, pp. 3-46; DE # 115, ¶ 1, pp. 1-2) The district court determined that the Tennessee Supreme Court's ruling on this issue was entitled to the presumption of correctness and that the ruling was neither contrary to, nor an improper application of, clearly established federal law. (DE # 183, pp. 15-16) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### B. Constitutionality of the "Reasonable Doubt" Jury Instruction (DE # 183, pp. 16-25)

Zagorski claimed that the "reasonable doubt" jury instruction at both the guilt and sentencing phases of his trial violated his constitutional rights because it lessened the prosecution's burden of

---

[1]The reference to the record that appears beneath each claim that follows is to the district court's analysis of that claim in its memorandum and opinion (DE # 183).

proof.  (DE #16, ¶ III.7, pp. 12-13)  The district court determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 25)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

### C.  Constitutionality of the "Malice" Jury Instruction
(DE # 183, pp. 25-26)

Zagorski argued that the "malice" jury instruction at the guilt phase of his trial violated his constitutional rights because it lessened the prosecution's burden of proof.  (DE #16, ¶ III.8, p. 13)  The district court determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 26)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

### D. Zagorski's Claim Under *Brady v. Maryland*
(DE # 183, pp. 26-101)

Zagorski alleged that the prosecution withheld exculpatory evidence that would have affected the outcome of the guilt and/or the sentencing phases of his trial, thereby violating his constitutional rights.  (DE # 16, ¶ III.9, pp. 13-16)  Zagorski's *Brady* claims are discussed individually below.

#### a.  Claims in the Amended Petition

##### (1)  Failure to Disclose Jeff Long's Investigative Report Containing Names of Others with Knowledge of the Murders
(DE # 183, pp. 39-42)

Zagorski claimed that a report prepared by Hickman County investigator, Jeff Long, containing names of individuals with knowledge of the Dotson-Porter murders was not disclosed to the defense.  (DE # 16, ¶ III.9.a, p. 14)  The district court determined that the Tennessee Court of Criminal Appeals' ruling on this issue was entitled to the presumption of correctness and that the

3

ruling was neither contrary to, nor an improper application of, clearly established federal law.[2] (DE # 183, pp. 41-42) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

(2) Failure to Disclose Evidence of Other Suspects with a
Motive to Kill Dotson and Porter
(DE # 183, pp. 42-47)

Zagorski alleged that evidence was suppressed of others who had a motive to kill Porter. (DE # 16, ¶ III.9b, p. 14) The exculpatory evidence at issue pertained to notes linking Buddy Corbitt and a man named Langford to the murders, a note that a man named Tony Rigsby was involved in the murders, and a letter dated September 29, 1983 that implicated persons in Houston, Texas in the murders. The district court determined that none of the notes was material and, as such, there was no *Brady* violation, even though the notes were not disclosed.[3] (DE # 183, pp. 44, 46) Incorporating the section by reference that followed in its memorandum and opinion, the district court determined that the September 29 letter was not suppressed, that the Court of Criminal Appeals' ruling on the issue was entitled to the presumption of correctness, and that the ruling was neither contrary to, nor an improper application of, clearly established federal law.[4] (DE # 183, pp. 47, 49-50) A COA will not issue on any of these claims because Zagorski did not make a substantial showing of the denial of a constitutional right.

---

[2]The district court also determined that Zagorski waived this claim in these proceedings under *Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004), because he did not present, develop, or argue this claim in subsequent briefs before this court. (DE # 183, p. 42)

[3]The district court also determined that Zagorski waived this claim with respect to the notes under *Spirko v. Mitchell,* at n. 2 above, because he did not present, develop, or argue these claims in subsequent briefs before this court. (DE # 183, p. 49)

[4]The district court also determined that Zagorski waived this claim with respect to the September 29 letter in these proceedings under *Spirko v. Mitchell* at n. 2 above, because he did not present, develop, or argue this claim in subsequent briefs before this court. (DE # 183, pp. 47, 49)

4

### (3) Failure to Disclose the September 29, 1993 Letter About Persons in Houston, Texas With Knowledge of the Murders
### (DE # 183, pp. 47-50)

Zagorski claimed that Daniel W. Cook, Assistant District Attorney General for the 21st Judicial District, wrote a letter on September 29, 1983 to Hickman County investigator, Jeff Long, with information that persons in Houston, Texas had knowledge of the Dotson-Porter murders. (DE # 16, ¶ III.9.c, p. 14) For the reasons stated in ¶ D.a(2), *supra* at p. 4, a COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### (4) Failure to Disclose Information That Witnesses May Have Received Consideration for Their Testimony
### (DE # 183, pp. 50-69)

Zagorski alleged that James Blackwell, Sallie Salmon, Don Peery, and James Bruce received consideration for their testimony that was not revealed to the defense. (DE # 16, ¶ III.9.d, pp. 14-15)

### (a) Sallie Salmon and James Bruce
### (DE # 183, pp. 50-51)

Zagorski alleged that Salmon received preferential treatment on drug charges that were brought against her after she testified and that Bruce was permitted to retain some of Zagorski's personal property. (DE # 16, ¶ III.9.d.2) and 4), p. 15) The district court determined that Salmon and Bruce did not receive consideration for their testimony and that, even if the State failed to disclose the evidence at issue, such failure did not amount to a *Brady* violation.[5] (DE # 183, p. 51) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

---

[5]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review. (DE # 183, p. 50) Additionally, the district court determined that Zagorski waived this claim under *Spirko v. Mitchell*, *supra* at p. 4 n. 2, because he did not present, develop, or argue this claim in subsequent briefs before this court. (DE # 183, p. 51)

5

(b)  Don Peery
(DE # 183, pp. 51-55)

Zagorski claimed that Peery received favorable treatment on possible/pending charges in exchange for his testimony.  (DE # 16, ¶ III.9.d, p. 14)  The district court determined that the evidence pertaining to Peery was neither suppressed nor material and, as such, there was no *Brady* violation.  (DE # 183, p. 54-55)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

(c)  Jimmy Blackwell
(DE # 183, pp. 55-69)

Zagorski alleged that Blackwell received the following favorable consideration in exchange for his testimony (DE # 16, ¶ III.9.d.1, pp. 15-16; DE # 104, ¶ III.C.2.a, pp. 57, 62; DE # 158, ¶¶ I.D-E, H, pp. 9-13, 19-21):

[1]    Favorable disposition of cases 819206F, 819207F, and 819208F brought against Blackwell in 1981.  (DE # 183, pp. 57-62)  The district court determined that the evidence at issue was not suppressed and, as such, there was no *Brady* violation.[6] (DE # 183, pp. 60-62)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

[2]    Failure to vacate Blackwell's suspended sentence in case 819207F, still in force at the time of the Dotson-Porter murders, and/or failure to prosecute him on drug conspiracy charges. (DE # 183, pp. 62-64)  The district court determined that the evidence at issue was not suppressed

_____

[6]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, pp. 57-60)

and, as such, there was no *Brady* violation.[7]  (DE # pp. 63-64)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

[3]    <u>General Gay's July 21, 1983 letter to Blackwell</u>.  (DE # 183, pp. 64-65)  The district court determined that failure to disclose this letter did not constitute a *Brady* violation.  (DE # 183, pp. 64-65)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

[4]    <u>Special treatment in cases 8510289F, 8510290F, 8510291F, 8510292F, 851093F,</u> <u>and 851094F</u>.  (DE # 183, pp. 65-69)  The district court determined that this claim did not constitute a *Brady* violation.[8]  (DE # 183, pp. 66, 68-69)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

(5)  Failure to Disclose Evidence in Possession of the TBI That
Was Inconsistent with the State's Theory of the Case
(DE # 183, pp. 69-70)

Zagorski alleged that his rights under *Brady* were violated because the TBI did not produce reports in its possession that were inconsistent with the prosecution's theory of the case.  (DE # 16, ¶ III.9.e, p. 15)  At issue are two TBI reports that were introduced into evidence at the *habeas corpus* evidentiary hearing.  The district court determined that this claim did not constitute a *Brady* violation.[9]  (DE # 183, p. 70)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

---

[7]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, pp. 62-63)

[8]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, pp. 65-66)

[9]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 34)

7

(6)  Failure to Disclose Evidence Pertaining to the Credibility/Involvement in
Illegal Activities of Jimmy Blackwell, Don Peery, Jimmy Porter,
Buddy Corbitt, "and/or the Eastside Tavern"
(DE # 183, pp. 70-79)

Zagorski claimed that there was evidence in the possession of law enforcement authorities,

including General Baugh, the TBI and/or the FBI, that pertained to the lack of credibility and

involvement in illegal activities of Blackwell, Peery, Porter, Corbitt, "and/or the Eastside Tavern."

(DE # 16, ¶ III.9.f, pp. 15-16)

(a)  Jimmy Blackwell
(DE # 183, pp. 71-77)

[1]    Failure to disclose information that Blackwell was a Major Drug Dealer in Hickman

County (DE # 104, ¶ III.C.2.b, pp. 61-62; DE # 158, ¶¶ I.E and G, pp. 12, 18):

[a] Zagorski claimed that a note was suppressed that characterized Blackwell as

the "epitome of a punk drug dealer."  The district court determined that the note was not material

and, as such, failure to disclose it did not constitute a *Brady* violation.  (DE # 183, p. 72)  A COA

will not issue on this claim because Zagorski did not make a substantial showing of the denial of a

constitutional right.

[b]  Zagorski claimed that two Tennessee Department of Safety Reports were

suppressed that showed Blackwell's criminal background.  The district court determined that the

reports at issue were not suppressed and, as such, there was no *Brady* violation.[10]  (DE # 183, p. 73)

A COA will not issue on this claim because Zagorski did not make a substantial showing of the

denial of a constitutional right.

[c] Zagorski claimed that a note was suppressed that characterized Blackwell as

the "boss man."  The district court determined that this claim was waived under *Spirko v. Mitchell*,

---

[10]The district court also determined that this claim was procedurally defaulted for
purposes of federal *habeas corpus* review.  (DE # 183, p. 34)

8

*supra* at p. 4 n. 2, because Zagorski did not present, develop, or argue this claim in subsequent briefs before this court. (DE # 183, p. 73)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

[d]  Zagorski claimed that a note was suppressed that indicated Blackwell had sold 25 pounds of marijuana the week prior to the murders.  The district court determined that this claim was waived under *Spirko v. Mitchell*, *supra* at p. 4 n. 2, because Zagorski did not present, develop, or argue this claim in subsequent briefs before this court. (DE # 183, p. 76)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

[2]    Failure to disclose information that Blackwell had set up the drug deal in which Dotson and Porter were murdered.  (DE # 16, ¶ III.d.1, p. 14)  The district court determined that this claim was waived under *Spirko v. Mitchell*, *supra* at p. 4 n. 2, because Zagorski did not present, develop, or argue this claim in subsequent briefs before this court. (DE # 183, p. 76)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

[3]    Failure to disclose information that Blackwell had assisted law enforcement officials in prior drug investigations.  (DE # 16, ¶ III.9.1.1), p. 15)  The district court determined that this claim was without merit and, as such, there was no *Brady* violation.  (DE # 183, p. 76)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

[4]    Failure to disclose that Dotson and Porter were killed as a result of a drug trafficking investigation that involved Blackwell.  (DE # 104, ¶ III.C.2.b.5), p. 62)   The district court determined that these claims were waived under *Spirko v. Mitchell*, *supra* at p. 4 n. 2, because Zagorski did not present, develop, or argue this claim in subsequent briefs before this court. (DE #

9

183, p. 77)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

(b)  Don Peery
(DE # 183, p. 77)

This claim pertained to Zagorski's allegation that Peery received favorable treatment in exchange for his testimony.  As previously discussed, *supra* at p. 6, the district court determined that the information at issue was neither suppressed nor material and, as such, this claim was without merit.  (DE # 183, p. 77)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

(c)  Jimmy Porter
(DE # 183, pp. 77-79)

Zagorski alleged that information was withheld that Dotson and Porter were heavily involved in drug trafficking.  (DE # 16, ¶ III.9.f, p. 15)  The district court determined that Zagorski failed to show that the evidence at issue was favorable to him or that he was prejudiced by the failure to disclose it; therefore, there was no *Brady* violation.[11]  (DE # 183, pp.78-79)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

(d)  Buddy Corbitt
(DE # 183, p. 79)

This claim pertained to Zagorski's allegation that Corbitt was involved in the Dotson-Porter murders.  (DE # 183, pp. 77-79)  As previously discussed, *supra* at p. 4, the district court determined that the information at issue was not material and, as such, there was no *Brady* violation even though

---

[11]The district court also determined that Zagorski waived this claim in these proceedings under *Spirko v. Mitchell, supra* at p. 4 n. 2, because he did not present, develop, or argue this claim in subsequent briefs before this court.  (DE # 183, p. 78)

10

the information not disclosed.[12]  (DE # 183, p. 79)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

(e)  The Eastside Tavern
(DE # 183, p. 79)

The district court determined that unspecified information pertaining to the Eastside Tavern was waived under *Spirko v. Mitchell*, *supra* at p. 4 n. 2, because Zagorski did not present, develop, or argue these claims in subsequent briefs before this court. (DE # 183, p. 79)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

(7)  Failure to Disclose the Results of an Investigation Conducted
by the Robertson County Sheriff's Department into
Zagorski's Activities in Louisiana
(DE # 183, pp. 79-80)

Zagorski argued that the results were never disclosed of a Robertson County Sheriff's Department investigation that revealed that Zagorski was not really a mercenary, that he had no military training, and that he "fantasized a lot."[13]  (DE # 16, ¶ III.9.g, p. 16)  The district court determined that the evidence at issue was not suppressed and, as such, there was no *Brady* violation. (DE # 183, p. 80)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

---

[12]As previously noted, *supra* at p. 4 n. 3, this claim also was waived under *Spirko v Mitchell*, *supra* at p. 4 n. 2..

[13]The district court also determined that Zagorski waived this claim in these proceedings under *Spirko v. Mitchell*, *supra* at p. 4 n. 2, because he did not present, develop, or argue this claim in subsequent briefs before this court.   (DE # 183, p. 80)

### b. Claims Arising Subsequent to the Amended Petition

#### (1) Failure to Disclose That Blackwell Was an Informant Who Worked for Sheriff Atkinson (DE # 83, pp. 80-84)

Zagorski asserted that Blackwell was an informant for Sheriff Atkinson and that failure to disclose that relationship constituted a *Brady* violation. (DE # 158, ¶ I.A, pp. 2-4) The district court determined that Zagorski failed to establish that Blackwell worked as an informant for Sheriff Atkinson; therefore, there was no *Brady* violation.[14] (DE # 183, p. 84) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

#### (2) Failure to Disclose That Blackwell Murdered Harry McKinney as Well as Pp. and Porter, and that He Paid Off Sheriff Atkinson in Both Instances to Avoid Prosecution (DE # 193, pp. 84-89)

Zagorski alleged that Blackwell killed a man named Harry McKinney in 1976, as well as Pp. and Porter in 1983, and that he paid Sheriff Atkinson in both instances to avoid prosecution. (DE # 158, ¶¶ I.B-C, pp. 5-9) The district court determined that, because there was no evidence that Blackwell was a suspect in these murders, or that evidence of his involvement was suppressed, there was no *Brady* violation.[15] (DE # 183, pp. 86-89) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

#### (3) Failure to Disclose That Blackwell Was a Major Drug Dealer in Hickman County and Paid Off Sheriff Atkinson to Avoid Prosecution (DE # 183, pp. 89-90)

Zagorski claimed that Blackwell was protected by Sheriff Atkinson and, as a result, he was

---

[14]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review. (DE # 183, p. 81)

[15]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review. (DE # 183, p. 86)

allowed to distribute large amounts of marijuana in Hickman County without fear of prosecution. (DE # 158, ¶¶ I.B-C, pp. 5-10)  The district court determined that the evidence at issue was not suppressed and that there was no *Brady* violation with respect to this claim.[16]  (DE # 183, pp. 89-90) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

> (4)  Failure to Disclose Department of Safety Documents That
> Established That Blackwell Was an Established Drug
> Dealer in Hickman County
> (DE # 183, p. 90)

Zagorski argued that the following three Department of Safety/TBI documents were not disclosed to defense counsel: 1) a TBI laboratory report on suspected controlled substances in Hickman County case 819207F: 2) a Department of Safety report pertaining to Blackwell's attempt to purchase drugs; 3) a Department of Safety report that Blackwell's father suspected that his son was dealing drugs.  (DE # 158, ¶ I.G, p. 18)  These reports, and one other Department of Safety report dated February 1, 1978 that identified Blackwell's supplier, were introduced into evidence at the *habeas corpus* evidentiary hearing.  The district court determined that this claim did not constitute a *Brady* violation.[17]  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

> c.  Viewing Zagorski's *Brady*
> Claim Collectively
> (DE # 183, pp. 91-98)

In making its final determination of Zagorski's *Brady* claim, the court determined whether

---

[16]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 89)

[17]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 34)

the favorable evidence determined to have been suppressed, if viewed in the context of the entire record, would have undermined confidence in the verdict. The district court determined that, "even if all of the evidence" determined to have been suppressed "had been available to defense counsel at the time of trial, that evidence, even when viewed cumulatively, [wa]s not sufficient to undermine confidence in Zagorski's conviction and sentence of death." (DE # 183, p. 98) Therefore, the district court determined that Zagorski was not entitled to relief under *Brady*. (DE # 183, p. 98) A COA will not issue on Zagorski's *Brady* claim because, even considering the suppressed evidence cumulatively, he did not make a substantial showing of the denial of a constitutional right.

### d. Ineffective Assistance of Counsel For Failure to Investigate and Present Exculpatory Evidence
(DE # 183, pp. 98-100)

In his response to the respondent's motion for summary judgment, Zagorski argued that, if the court determines that there is no *Brady* violation, then defense counsel were ineffective for failing to investigate and present exculpatory evidence. (DE # 104, ¶ III.C.2.a, pp. 56-60) The district court determined that, because Zagorski failed to show that he was prejudiced under *Strickland v. Washington*, 466 U.S. 668 (1984) during trial and on direct appeal, and because he had no constitutional right to effective assistance of counsel on post-conviction, he was not entitled to *habeas corpus* relief on these grounds.[18] (DE # 183, pp. 99-100) A COA will not issue because Zagorski did not make a substantial showing of the denial of a constitutional right.

### E. Ineffective Assistance of Counsel at Trial and on Direct Appeal
(DE # 183, pp. 100-105)

Zagorski asserted that defense counsel provided ineffective assistance both at trial and on

---

[18]The district court also determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review. (DE # 183, p. 99)

direct appeal in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments.  (DE #16, ¶ III.10, pp. 16-19)

1.  Procedural Default
(DE # 183, 100-103)

The district court determined that the following claims[19] were procedurally defaulted (DE # 183, pp. 100-103) with respect to defense counsels' failure to investigate and present:

2)  Forensic evidence to challenge the State's theory as to the origin of the spent .308 cartridge found at the scene of the crime.  (DE # 16, ¶ III.10.b.1), pp. 16-17)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

3)  Pathology evidence to challenge the State's theory as to the time and manner of the victims' deaths.  (DE # 16, ¶ III.10.b.2), p. 17)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

4)  Serology evidence to show the blood on Zagorski's knife was not the victims'.  (DE # 16, ¶ III.10.b.3, p. 17)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

5)  Evidence to show that items found at the scene of the crime could not have been Zagorski's and/or that they could not have been left at the scene at the time of the murders.  (DE # 16, ¶ III.10.b.4), p. 17)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

6)  Evidence to support the defense's theory that the murders did not occur in Robertson County.  (DE # 16, ¶ III.10.b.5), p. 17)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

7)  Evidence of other suspects including Buddy Corbitt.  (DE # 16, ¶ III.10.c, pp. 17-18)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

---

[19]For ease of reference, the numbers in the sub-paragraphs below reflect the numbers in the court's memorandum and opinion (DE # 183).

15

8) Evidence pertaining to Jimmy Blackwell's background. (DE # 16, ¶ III.10.d, p. 18)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

### 2. Defense Counsels' Failure to Investigate and Present Evidence Pertaining to Zagorski's State of Mind at the Hearing to Suppress His Incriminating Statements (DE # 183, pp. 103-105)

In his only exhausted ineffective assistance claim set forth here, Zagorski argued that defense counsel were ineffective for failing to investigate and present evidence of Zagorski's state of mind at the hearing to suppress his statements to the police.  (DE # 16, ¶ III.10.a, p. 16)  The district court determined that the Court of Criminal Appeals' ruling on this issue was entitled to a presumption of correctness, and that its ruling was neither contrary to, nor an unreasonable application of, clearly established federal law.  (DE# 183, p. 105)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### F.  Unconstitutional Jury Instruction That Relieved the Prosecution of Having to Prove Venue (DE # 183, pp. 105-106)

Zagorski asserted that the "venue" jury instruction at the guilt phase of his trial violated his constitutional rights because it lessened the prosecution's burden of proof.  (DE #16, ¶ III.11, pp. 18-19)  The district court determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 106)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

### G.  Trial Court Error in Excluding Opinion Testimony as to Where the Crimes Were Committed (DE # 183, pp. 106-108)

Zagorski claimed that the trial court erred in not permitting lay testimony regarding where the crimes might have been committed.  (DE # 16, ¶ III.12, pp. 19-20)  The district court determined that this claim was procedurally defaulted for purposes of *habeas corpus* review.  (DE # 183, p. 108)

16

A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

### H. Sufficiency of the Evidence Regarding Where the Crimes Were Committed
### (DE # 183, pp. 108-113)

Zagorski claimed that the evidence was insufficient to establish that the murders occurred in Robertson County. (DE # 16, ¶ III.13, p. 20; DE # 104, ¶V.B.2, pp. 107-109) The district court determined that the Tennessee Supreme Court's ruling on this issue was entitled to the presumption of correctness and that the ruling was neither contrary to, nor an unreasonable application of, clearly established federal law. (DE # 183, p. 113) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### I. Constitutionality of the "Heinous, Atrocious or Cruel " (HAC) Aggravating Circumstance
### (DE # 183, pp. 113-114)

Zagorski argued that the HAC aggravating circumstance considered by the jury was unconstitutionally vague. (DE # 16, ¶ III.14, pp. 20-26; DE # 104, ¶ IV.C, pp. 81-99; DE # 115, ¶ 4, pp. 3-4) The district court determined that this claim was without merit. (DE # 183, p. 114) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### J. Trial Court Error in Not Instructing the Jury About Mitigating Circumstances and 'Mis-Instructing' the Jury as to the Meaning of a 'Mitigating Circumstance'
### (DE # 183, pp. 114-121)

In this claim, Zagorski alleged that: 1) the trial court "refused" to instruct the jury on statutory mitigating factors (DE # 16, ¶ 15.a, p. 26); 2) during *voir dire*, jurors were "incorrectly" told that there were eight mitigating circumstances (DE # 16, ¶ 15.a, pp. 26-27); 3) when the jury asked the trial court for a definition, the trial court defined mitigating circumstances incorrectly (DE

17

# 16, ¶¶ 15.b-d, pp. 27-31; DE # 104, ¶¶ IV.B1-3., pp. 74-80).  According to Zagorski, these alleged errors prevented the jury from considering and weighing relevant mitigating circumstances.  (DE # 16, ¶¶ 15 and 15.e, p. 26, 31-32)

The district court determined that the claims enumerated as 2) and 3) above were procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 115)  A COA will not issue on these claims because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

As to Zagorski's claim regarding the court's "refusal" to provide the defense's request for instructions on specific mitigating circumstance, the district court determined that the Tennessee Supreme Court's ruling on this issue was entitled to the presumption of correctness, and that the ruling was neither contrary to nor an unreasonable application of clearly established federal law.  (DE # 183, p. 121)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### K.  Ineffective Assistance of Counsel for Failure to Investigate, Present and Argue Mitigating Factors (DE # 183, pp. 121-129)

Zagorski asserted that defense counsel were ineffective for failing to investigate, present, and argue mitigating circumstances at sentencing.  (DE # 16, ¶ III.16, pp. 32-38; DE # 104, ¶ IV.E, pp. 95-97)  Specifically, Zagorski claimed that: 1) defense counsel failed to investigate and present evidence that Zagorski had a troubled childhood (DE # 16, ¶ III.16.a, pp. 32-34; DE # 104, ¶ IV.E, p. 98); 2) he never told defense counsel that he did not want mitigating evidence presented (DE # 16, ¶ III.16.b, p. 34; DE # 104, ¶ IV.E, p. 97); 3) he did not make an informed, knowing, intelligent, and voluntary decision not to present mitigating evidence at sentencing (DE # 16, ¶ III.16.c, pp. 34-

18

35; DE # 104, ¶ IV.E, pp. 95-97)[20]; 4) defense counsel did not comply with the ethics opinion issued by the Tennessee Board of Responsibility (DE # 16, ¶ III.16.d, pp. 35-37); 5) defense counsel did not present any of the evidence adduced at trial that would have supported a verdict of life rather than death (DE # 16, ¶ III.16.e., pp. 37-38; DE # 104, ¶ IV.D, pp. 92-95).

The district court determined that Zagorski's claim that he never told defense counsel not to present mitigating evidence was procedurally defaulted for purposes of federal *habeas corpus* review. (DE # 183, pp. 125-126)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

With respect to the remainder of the claims enumerated 1, 3)-5) *supra*, the district court determined that the Court of Criminal Appeals' and Tennessee Supreme Court's rulings were entitled to the presumption of correctness, and that those rulings were neither contrary to, nor an unreasonable application of, clearly established federal law.  (DE # 183, p. 129)  A COA will not issue on any of these claims determined on the merits because Zagorski did not make a substantial showing of the denial of a constitutional right.

### L.  The Death Sentence in Zagorski's Case Was Imposed Arbitrarily (DE # 183, pp. 129-134)

Zagorski alleged that the death penalty was imposed against him arbitrarily because the prosecution had previously offered him two life sentences in exchange for a guilty plea.  (DE # 16, III.17, pp. 38-39)  The district court determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review.  (DE # 183, p. 134)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

---

[20]There were two paragraphs 16.c in the amended petition, both of which pertained to the same issue.  Therefore no distinction was been made between the two.

19

M.  Prosecution's Misleading, Unconstitutional, and
Fundamentally Unfair Statements to the Jury
(DE # 183, pp. 134-145)

Zagorski claimed that the prosecution made numerous misleading and fundamentally unfair statements to the jury in violation of his constitutional rights.  (DE # 16, ¶ III.18, pp. 39-42; DE # 24, ¶ II.M, pp. 12-13; DE # 104, ¶ V.C.2, pp. 113-115)

### 1.  Procedural Default

The district determined that the following four claims[21] of the eight claims advanced were procedurally defaulted for purposes of federal *habeas corpus* review (DE # 183, pp. 135-138):

3)  The prosecution misinformed prospective jurors that the mitigating circumstances "had to 'substantially'" outweigh the aggravating circumstances before a life sentence could be returned, and that it was up to the defense to present many mitigating circumstances.  (DE # 16, ¶ III.18.c, p. 40)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

4)  The prosecution made a "fundamentally unfair and untrue argument" that Zagorski would present a danger if sentenced to life, when no proof to that effect had been introduced.  (DE # 16, ¶ III.18.d, pp. 40-41)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

5)  The prosecution made a "fundamentally unfair argument" at sentencing when the jury was told that "if this jury sitting in this box, each one of you individually, cannot follow the law and render a death verdict in this case and find it isn't warranted, our system is in bad shape . . . ." (DE # 16, ¶ III.18.e, p. 41)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

8)  The prosecution argued improperly that the death sentence should be imposed because Zagorski showed no remorse for the murders.  (DE # 16, ¶ III.h, p. 41)  A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

---

[21]For ease of reference, the numbers in the sub-paragraphs below reflect the numbers in the court's memorandum and opinion (DE # 183).

2. Analysis of The Remaining Claims
on the Merits

In the first of the four claims that were not procedurally defaulted, *i.e.*, claim 1), Zagorski alleged that the prosecution improperly advised prospective jurors during *voir dire* that "it was the prosecution's 'duty' to seek the death penalty, thus unfairly giving an aura of official authority . . . ." (DE # 16, ¶ III.a, pp. 39-40)  The district court determined that the statements at issue neither undermined the fundamental fairness of Zagorski's trial nor contributed to a miscarriage of justice and, as such, he was not entitled to *habeas corpus* relief.  (DE # 183, p. 141)  The district court also determined that the Tennessee Supreme Court's ruling on this claim was not an unreasonable determination of the facts in view of the evidence and that the ruling was neither contrary to, nor an unreasonable application of, clearly established federal law.  (DE # 183, p. 145)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

The second claim, *i.e.*, claim 2) pertains to the statement that the presumption of innocence is an "advantage" to Zagorski.  (DE # 16, ¶ III.18.b, p. 40)  The district court determined that this statement neither undermined the fundamental fairness of Zagorski's trial nor contributed to a miscarriage of justice and, as such, he was not entitled to *habeas corpus* relief on this ground.  (DE # 183, p. 142)  The district court also determined that the Tennessee Supreme Court's ruling on this claim was not an unreasonable determination of the facts in view of the evidence and that the ruling was neither contrary to, nor an unreasonable application of, clearly established federal law.  (DE # 183, p. 145)  A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

The third claim, *i.e.*, claim 6), pertained to the following statement made by the prosecution during closing argument:

> [Zagorski] shows so little regard for human life, that he did what he did to Dotson and Porter. He didn't want to face the music in Ohio; that he, in order to avoid arrest, just tried his best to kill Mr. Hall, Estes Hall. Now, is it enough for Mr. Zagorski to be given a life sentence and go down to the state penitentiary and play his cards and deal out cards with his fellow convicts and get phone calls and have visitors, get mail, watch television down there and brag about how he killed two people in Robertson County, Tennessee; how he shot them, zip, zip; how he slit their throats with his dagger, his knife; be talking about that to his fellow convicts, or not? Or is it better to follow the law in this case and give Mr. Zagorski what he deserves in this case?

(DE # 9, Add. 1, Vol. IX, pp. 1124-1125; DE # 16, ¶ III.18.f, p. 41) The district court determined that, because the evidence against Zagorski was overwhelming, this statement did not undermine the fairness of the trial at sentencing, nor did it contribute to any miscarriage of justice. (DE # 183, pp. 142-143) The district court also determined that the Tennessee Supreme Court's ruling on this claim was not an unreasonable determination of the facts in view of the evidence and that it was neither contrary to, nor an unreasonable application of, clearly established federal law. (DE # 183, p. 145) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

Finally, in claim 7), Zagorski alleged that, by characterizing the defense's closing argument as "begging," the prosecution "denigrated mercy, which is a proper . . . mitigating circumstance and a legitimate basis for imposing a sentence of life in a capital case." (DE # 104, ¶ V.C.2.e, p. 114) The district court determined that the prosecution's characterization of the defense's argument as "begging" did not undermine the fundamental fairness of the trial, nor contribute to a miscarriage of justice. (DE # 183, p. 145) The district court also determined that the Tennessee Supreme Court's ruling on this claim was not an unreasonable determination of the facts in view of the

22

evidence and that the ruling was neither contrary to, nor an unreasonable application of, clearly established federal law. (DE # 183, p. 145) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### N. Trial Court Error in Not Providing Funds for
### Investigative and Expert Assistance
### (DE # 183, pp. 145-154)

Zagorski claimed that the trial court erred in denying the defense team's request for funds to hire investigative and expert assistance in violation of his constitutional rights. (DE # 16, ¶ III, p. 42) Three factual allegations comprised this claim.

Zagorski argued first that the trial court erred in not providing funds to hire an investigator. (DE # 16, ¶ III.19 & 19.a, p. 42) The district court determined that this was procedurally defaulted for purposes of federal *habeas corpus* review. (DE # 183, p. 148) A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its procedural ruling.

Next, Zagorski claimed that the trial court erred in not providing funds to hire a ballistics expert. (DE # 16, ¶ III.19 and 19.b, p. 42) The district court determined that the court's refusal to provide funding for a ballistics expert was harmless beyond a reasonable doubt and, as such, Zagorski was not entitled to *habeas corpus* relief. (DE # 183, p. 151) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

Finally, Zagorski alleged that the trial court's rulings on expert funding rendered defense counsel ineffective. (DE # 16, ¶ III.19 and 19.c, p. 42) There were two facets to the last part of this claim. The first was that the trial court erred in not providing the funding at issue. With respect to this aspect of the claim, the district court determined that this claim was procedurally defaulted for purposes of federal *habeas corpus* review. (DE # 183, p. 152) A COA will not issue on this claim because jurists of reason would not find it debatable that the district court was correct in its

23

procedural ruling.

The second part of this claim was grounded in an allegation of ineffective assistance of counsel for failure to obtain expert assistance. With respect to this part of the claim, the district court determined that Zagorski had failed to show that he had been prejudiced and, because he could not establish both parts of the two-part test under *Strickland*, he was not entitled to federal *habeas corpus* relief. (DE # 183, pp. 152-154) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### O. Trial Court Error in Excluding Jurors Who Opposed the Death Penalty (DE # 183, pp. 154-159)

Zagorski alleged that the trial court improperly excluded potential jurors who "expressed qualms about the death penalty" in violation of his constitutional rights. (DE 16 # ¶ 20, pp. 42-43; DE # 24, ¶ II.O, pp. 13-14; DE # 104, ¶ V.D, pp. 116-117) The district court determined that the Tennessee Supreme Court's ruling on this issue was entitled to the presumption of correctness, and that the ruling was neither contrary to nor an unreasonable application of clearly established federal law. (DE # 183, p. 159) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### P. Zagorski's Competence to be Executed (DE # 183, pp. 159-160)

Zagorski asserted that he is not competent to be executed. (DE # 16, ¶ 21, p. 43; DE # 24, ¶ II.P, p. 14; DE # 114, ¶ V.G, p. 119) The district court determined that this issue was not yet ripe and, as such, Zagorski was not entitled to *habeas corpus* relief. (DE # 183, p. 160) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### Q. The Death Penalty Is Unconstitutional Because of the Length of Time That Zagorski Has Been Imprisoned Under a Sentence of Death
#### (DE # 183, pp. 160-162)

Zagorski argued that the length of time he has been imprisoned under a sentence of death constitutes cruel and unusual punishment. (DE # 16, ¶ III.22, p. 43; DE # 104, ¶ V.E, p. 117) The district court determined that this claim was without merit. A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### R. The Constitutionality of Tennessee's Death Penalty Statute
#### (DE # 183, p. 162)

Zagorski challenged the constitutionality of Tennessee's death penalty statute on the grounds that it constitutes cruel and unusual punishment under the Eighth Amendment. (DE # 16, ¶ 23, p. 43) The district court determined that this claim was without merit. (DE # 183, p. 162) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

### S. Zagorski's Motion for a *De Novo* Review of All of His Claims
#### (DE # 183, pp. 162-164)

Zagorski argued that, under the Schaivo Act, he is "no longer subject to any provisions of the . . . AEDPA, nor are any of his claims subject to any assertion of procedural default." (DE # 176) The district court determined that this claim was without merit. (DE # 182, p. 164) A COA will not issue on this claim because Zagorski did not make a substantial showing of the denial of a constitutional right.

## II.  CONCLUSION

As reasoned herein, a COA will NOT issue on any of the claims that Zagorski raised in his petition, his amended petition, or any of his pleadings subsequent thereto.  The Clerk is DIRECTED to return the record to the Sixth Circuit Court of Appeals.

It is so ORDERED.

Aleta A. Trauger
United States District Judge