# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| EDMUND ZAGORSKI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:99-cv-01193 |
| | ) | |
| WARDEN TONY MAYS, | ) | JUDGE TRAUGER |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM**

The petitioner, Edmund Zagorski, was convicted and sentenced to death in 1984 for the murders of Dale Dotson and Jimmy Porter. He has been denied relief in direct appeal, post-conviction, and federal habeas proceedings. *See Zagorski v. Bell*, 326 F. App'x 336 (6th Cir. 2009) (summarizing procedural history and affirming the denial of habeas relief). On February 25, 2013, the petitioner filed a Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b), in which he asserted that the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), entitled him to consideration of the merits of three habeas claims that this court had previously rejected as procedurally defaulted. (Doc. No. 212.) The parties disputed whether *Martinez* and a subsequent case that expanded the jurisdictions in which it might apply, *Trevino v. Thaler*, 569 U.S. 413 (2013), applied in Tennessee, and, if so, whether they provided a basis for reconsidering judgment under Rule 60(b). (*See* Doc. No. 228.) Because those questions had divided the district courts within the Sixth Circuit and were then on appeal before the United States Court of Appeals for the Sixth Circuit, the court invited the parties to address whether the interests of fairness and judicial economy warranted staying the petitioner's motion until the Sixth Circuit ruled on them. (Doc. No. 228.) The petitioner favored a stay, while the respondent

opposed it. (Doc. Nos. 229–31.) On September 25, 2013, the court stayed this matter "pending clarification by the Sixth Circuit Court of Appeals on issues pertinent hereto." (Doc. No. 232.)

The petitioner moved to lift the stay and for relief on his Rule 60(b) motion on June 11, 2018, relying on his 2013 briefs. (Doc. No. 233.) On July 11, 2018, the court granted the motion in part by lifting the stay, but ordered both parties to submit amended briefs in light of the intervening developments in applicable caselaw and specifically ordered that the "briefs should address applicable precedent concerning whether *Martinez* is a proper basis for Rule 60 relief." (Doc. No. 235.) Both parties have now filed their briefs, and the petitioner's motion is ripe for review. (Doc. Nos. 241–43.)

## I. STANDARD OF REVIEW

Rule 60 of the Federal Rules of Civil Procedure allows for revisions to a district court's judgment when necessary to correct a clerical mistake or for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;
(2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) The judgment is void;
(5) The judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) Any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The petitioner does not allege any mistake, excusable neglect, newly discovered evidence or other grounds for relief under Rule 60(b)(1)–(5). Instead, he relies on Rule 60(b)(6)'s "any other reason that justifies relief" as a basis for his motion. (Doc. No. 241 at 1.)

A movant seeking relief pursuant to this "catch-all" provision faces an exceedingly high burden:

> Even stricter standards are routinely applied to motions under subsection (6) of Rule 60(b) than to motions made under other provisions of the rule. Indeed, relief may be granted under Rule 60(b)(6) "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citations omitted). "Courts . . . must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Id.* (citations and internal quotation marks omitted). "The 'something more' . . . must include unusual and extreme situations where principles of equity mandate relief." *Id.* (emphasis in original).

*Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007). Reopening a final judgment is not favored, and the extraordinary circumstances required by this rule "will rarely occur in the habeas context." *Gonzales v. Crosby*, 545 U.S. 524, 535 (2005). Factors to consider in the "case-by-case inquiry" required by Rule 60(b)(6) motions include the risk of injustice to the parties, the interest in the finality of judgments, and the risk of undermining public confidence in the judicial process. *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (quoting *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015), and *Buck v. Davis*, 137 S. Ct. 759, 778 (2017)).

The petitioner also relies on Rule 60(d)(1),[1] which preserves the court's authority to "entertain an independent action to relieve a party from a judgment, order, or proceeding." Rule 60(d)(1) only permits relief from judgment where necessary "to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). The Sixth Circuit has held that this

---

[1] The petitioner's Amended Motion also cites 28 U.S.C. § 2243 and several provisions of the Constitution as bases for reopening his habeas case for reconsideration. (Doc. No. 241 at 1.) Section 2243 authorizes courts to grant a writ of habeas corpus, "unless it appears from the application that the applicant or person detained is not entitled thereto," and to "hear and determine the facts, and dispose of the matter as law and justice require." That is precisely what the court did in 2006 when it determined that the petitioner was not entitled to relief under the Antiterrorism and Effective Death Penalty Act of 1996. Neither Section 2243 nor the portions of the Constitution on which the petitioner relies provide any independent authority to reopen and revisit that determination. *Brewington v. Klopotoski*, No. CIV.A. 09-3133, 2012 WL 1071145, at *6 (E.D. Pa. Mar. 29, 2012).

is a "stringent and demanding standard," and a habeas petitioner seeking relief under this subsection must "make a strong showing of actual innocence." *Mitchell v. Reese*, 651 F.3d 593, 595–96 (6th Cir. 2011).

## II. ANALYSIS

### A. Petitioner's Diligence

The respondent asserts that the petitioner is not entitled to Rule 60 relief because he has not diligently pursued his asserted rights. (Doc. No. 242 at 9–10.) Rule 60(c) requires that 60(b) motions must be filed "within a reasonable time," and courts "evaluate reasonableness by considering a petitioner's diligence in seeking relief." *Miller*, 879 F.3d at 699.

In this case, the basis for the petitioner's 2013 Rule 60 motion was *Martinez*, which was decided on March 20, 2012. The petitioner filed his original motion on February 25, 2013, more than 11 months later. (Doc. No. 212.) The court stayed the case on September 25, 2013, pending determinations by the Sixth Circuit concerning the applicability of *Martinez* in Tennessee and whether *Martinez/Trevino* provided a basis for reconsideration of a judgment under Rule 60(b). (Doc. No. 228 at 1–2; Doc. No. 232.) The Sixth Circuit decided the latter issue in *McGuire v. Warden*, 738 F.3d 741 (6th Cir. 2013), on December 30, 2013, and the former in *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014), on March 19, 2014. The Tennessee Supreme Court set the petitioner's execution date of October 11, 2018, on March 15, 2018. Order, *Tennessee v. Zagorski*, No. M1996-00110-SC-DPE-DD (Tenn. Mar. 15, 2018). The petitioner filed his motion to reopen almost 3 months later, on June 11, 2018, observing that the case had "lain dormant for some time," and pointing to the Sixth Circuit's decision in *Sutton* as the basis for reopening. (Doc. No. 233.)

The petitioner's delay of 11 months between the *Martinez* decision and his original

motion, combined with his delay of more than four years after *Sutton* was decided and almost three months after his execution date was set before moving to reopen his case, evidences a lack of diligence on his part in pursuing the relief he seeks. The court notes, however, that the Sixth Circuit has found that a 12-month delay in seeking relief after *Martinez* represented sufficient diligence, *Wright v. Warden, Riverbend Maximum Sec. Inst.*, 793 F.3d 670, 672 (6th Cir. 2015), and that the court's order staying this case did not direct the parties to move to reopen it within any particular time frame. (Doc. No. 232.) Accordingly, the court does not consider this factor to be determinative and applies negligible weight to it.

### B. Impact of *Martinez*

1. *Martinez* is not an extraordinary circumstance warranting Rule 60(b)(6) relief.

Ordinarily, when a habeas petitioner has failed to fully exhaust a claim in state court and is unable to do so because of a statute of limitations or other state procedural rule, the claim is considered to be procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991). Except in cases where the petitioner can establish that he is actually innocent or that no reasonable juror would have found him eligible for the death penalty in light of new evidence, federal habeas review of the merits of defaulted claims is prohibited unless the petitioner demonstrates cause for, and prejudice from, his default. *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Calderon v. Thompson*, 523 U.S. 538, 559–60 (1988). This court previously determined that several of the petitioner's habeas claims were procedurally defaulted without adequate cause or prejudice and denied relief on that basis. (Doc. No. 183.) Those claims included the claims raised in the petitioner's pending motion: Claim 10(c), that trial counsel was ineffective for failing to investigate Buddy Corbitt as an alternative suspect (Doc. No. 241-1 at 17-18; Doc. No. 183 at 100–03); Claim 15, that the trial court did not properly instruct the jury about the meaning

of "mitigating circumstance" (Doc. No. 241-1 at 26; Doc. No. 183 at 114–15); and Claim 17, that the petitioner's death sentence was unconstitutional because he had been offered a pre-trial plea deal for two life sentences. (Doc. No. 241-1 at 38; Doc. No. 183 at 129–34.)

At the time the court denied relief on the habeas petition in 2006, it was clearly established that a habeas petitioner could not demonstrate cause for a procedural default by claiming that he had received ineffective assistance of counsel during state post-conviction proceedings. *Coleman*, 501 U.S. at 752–53; *Ritchie v. Eberhart*, 11 F.3d 587, 591–92 (6th Cir. 1993). Almost 6 years after this court's previous decision, however, the Supreme Court held in *Martinez* that, in certain circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. The following year, the Supreme Court held that *Martinez* applies not only in states that prohibit petitioners from raising ineffective-assistance claims on direct appeal, but also to those whose legal systems "make it virtually impossible" to do so. *Trevino*, 569 U.S. at 417. As mentioned above, the Sixth Circuit has held that this *Martinez/Trevino* exception applies in Tennessee. *Sutton*, 745 F.3d at 795–96. The petitioner asserts in his pending motion that "[i]n light of *Martinez* . . . [his] claims are not defaulted, and he is now entitled to have them heard on the merits." (Doc. No. 241 at 2.)

The fact that *Martinez/Trevino* applies in Tennessee, however, does not mean that it provides a basis for reconsidering the 2006 judgment in this case. The Sixth Circuit held in December 2013, shortly after this case was stayed, that "the change in the law resulting from the recent *Trevino* decision is flatly not a change in the constitutional rights of criminal defendants, but rather an adjustment of an equitable ruling by the Supreme Court as to when federal statutory relief is available." *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir.

2013). Accordingly, *Martinez/Trevino* did not sufficiently "change the balance" of factors as required to reopen a case pursuant to Rule 60(b). *Id.* The Sixth Circuit has consistently and repeatedly held the same since then:

> Based on *Martinez* and *Trevino*, [the petitioner] argues that he now can establish cause to excuse those defaults and receive a merits review of those claims. However, it "is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *McGuire*, 738 F.3d at 750 (citing *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007)). Moreover, neither *Martinez* nor *Trevino* sufficiently changes the balance of the factors for consideration under Rule 60(b)(6) to warrant relief. *McGuire*, 738 F.3d at 749–51.

*Henness v. Bagley*, 766 F.3d 550, 557 (6th Cir. 2014); *see also Miller v. Mays*, 879 F.3d 691, 698–99 (6th Cir. 2018) ("We have consistently held that *Martinez* and *Trevino*, as intervening decisions, do not alone 'sufficiently change[ ] the balance of the factors for consideration under Rule 60(b)(6) to warrant relief.'"); *Moore v. Mitchell*, 848 F.3d 774, 777 (6th Cir. 2017) ("[W]e have held that neither *Martinez* nor *Trevino*, without more, provides the kind of extraordinary circumstances that would justify the relief sought under Rule 60(b)."); *Wright v. Warden, Riverbend Maximum Sec. Inst.*, 793 F.3d 670, 672 (6th Cir. 2015) (citing *McGuire* and *Henness* and holding that *Martinez* and *Trevino* are not an extraordinary circumstance for the purposes of Rule 60(b)(6)); *Sheppard v. Robinson*, 807 F.3d 815, 820–21 (6th Cir. 2015) ("[O]ur court has already held that the Supreme Court's decision in *Martinez* and its follow-on decision in *Trevino* . . . are not "extraordinary" within the meaning of Rule 60(b)(6)."); *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015) ("As a change in decisional law, *Martinez* does not constitute an extraordinary circumstance meriting Rule 60(b)(6) relief.").

The petitioner suggests that *Buck v. Davis*, 137 S. Ct. 759 (2017), supports the position that *Martinez* warrants relief under Rule 60. But the Supreme Court expressly declined to reach that question in *Buck*, because the state had waived the issue by failing to raise it in the lower

courts. *Id.* at 780.  In this case, however, the respondent has argued consistently since its initial response in 2013 that *Martinez* is not an exceptional circumstance warranting relief under Rule 60. (Doc. Nos. 217, 230, 242.)  The question of whether *Martinez* justifies Rule 60 relief is not waived in this case, as it was in *Buck*, and the answer to that question is no, as dictated by the Sixth Circuit precedent discussed above.

The petitioner's Rule 60(b)(6) motion, based on *Martinez*, must therefore be denied.

2. *Martinez* would not even apply to the petitioner's *Lockett* and *Jackson* claims.

Even if Rule 60(b)(6) authorized the court to reconsider its previous judgment in light of *Martinez*, that holding would not impact the court's previous ruling on Claims 15 or 17 of the amended petition.  The petitioner asserted in those claims that the trial court did not properly instruct the jury about mitigation, in violation of *Lockett v. Ohio*, 438 U.S. 586 (1978), and that his death sentence was unconstitutionally arbitrary pursuant to *United States v. Jackson*, 390 U.S. 570 (1968), in light of the state's earlier offer of a plea for life sentences. (Doc. No. 241-1 at 26, 38.)  But the "narrow exception" announced by *Martinez* was that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of ***a claim of ineffective assistance at trial***." *Martinez*, 566 U.S. at 9 (emphasis added). Subsequent decisions have confirmed that *Martinez* does not apply to any claims other than claims of ineffective assistance at trial. *Davila v. Davis*, 137 S. Ct. 2058, 2066 (2017) (holding that *Martinez* does not apply to claims of ineffective assistance on appeal); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (explaining that "[w]e will assume that the Supreme Court meant exactly what it wrote," and rejecting argument that *Martinez* applied to claims other than claims for ineffective assistance at trial).

Despite these judicial admonishments about the narrowness of *Martinez*'s application, the

petitioner advocates a much broader approach:

> Ed Zagorski further maintains that *Martinez* is not limited to providing "cause" for independent claims of ineffective assistance of counsel raised as grounds for habeas relief. It also necessarily applies to valid assertions of ineffective assistance of counsel which provide "cause" for the failure to raise a substantive constitutional claim raised in a federal habeas petition.

(Doc. No. 241 at 10.) According to the petitioner, therefore, *Martinez* excuses the default of an implicit assertion that trial counsel was ineffective for failing to object to the violations alleged in Claims 15 and 17, which, in turn, excuses the default of Claims 15 and 17. (*Id.* at 10–13.)

The petitioner correctly states that the ineffectiveness of trial counsel can provide cause to overcome the default of an underlying claim, but only when a claim of that ineffectiveness itself has been exhausted. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Applying *Martinez* to excuse such "ineffectiveness-as-cause claims" is a step that, according to the parties' briefs, no court has taken. The district court decision on which the petitioner relies, *Ellis v. Little*, No. 1:15-CV-00515-BLW, 2017 WL 386455 (D. Idaho Jan. 27, 2017), simply noted that the issue was "unclear" and that its resolution was not necessary in that case. *Id.* at *7 n.6. Even in his reply brief, which devotes three pages to this issue, the petitioner does not cite a single federal court opinion applying *Martinez* in this context. (Doc. No. 243 at 3–6.)

Several district courts have refused to expand *Martinez* as the petitioner suggests, including this one. *Duncan v. Carpenter*, No. 3:88-00992, 2015 WL 1003611, at *48 (M.D. Tenn. Mar. 4, 2015) (Nixon, J.) (rejecting the petitioner's assertion of a "two-layered showing of 'cause'" under *Martinez*); *see also Henderson v. Carpenter*, 21 F. Supp. 3d 927, 935 (W.D. Tenn. 2014) ("[T]his Court finds no reason to extend the limited holding in *Martinez* to claims other than ineffective assistance of trial counsel claims."); *Portee v. Stevenson*, No. 8:15-CV-487-PMD-JDA, 2016 WL 690871, at *3 (D.S.C. Feb. 22, 2016) (rejecting application of

*Martinez* when the alleged ineffectiveness was "one step removed": "instead of PCR counsel's error defaulting the underlying § 2254 ground, it defaulted a basis for excusing the default of that underlying ground"); *Northrup v. Blades*, No. 1:14-CV-00371-CWD, 2015 WL 5273261, at *7 n.5 (D. Idaho Sept. 9, 2015) (rejecting claim that "*Martinez* exception should be overlaid upon the *Edwards* exception," because "the *Martinez* Court emphasized the narrowness of the exception").

The United States District Court for the District of Arizona, in one of the first opinions to reject an argument to expand *Martinez* as the petitioner suggests, explained its reasoning as follows:

> Olmos attempts to derive support for the viability of this labyrinthine causal chain from *Martinez v. Ryan*, but that reliance is misplaced. The standard rule is that a petitioner has no constitutional right to counsel at collateral proceedings, and therefore cannot claim ineffective assistance at that stage. *See Coleman*, 501 U.S. at 753. The Supreme Court carved out a very narrow exception in *Martinez*: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's default of a claim of ineffective assistance at trial. But that is not Olmos's argument. . . . Olmos's claim is not ineffective assistance as cause to excuse default of a claim of ineffective assistance—it is that ineffective assistance serves as cause to excuse default of a claim of ineffective assistance as cause to excuse default of a constitutional claim. Olmos therefore seeks to extend *Martinez* to situations where the ineffective assistance claim is merely the excuse for a procedural default—not the base claim itself.
>
> . . . Olmos has cited no case where the dizzying chain of excuses he proposes has found acceptance. The Court declines to do so here.

*Olmos v. Ryan*, No. CV-11-00344-PHX-GMS, 2013 WL 3199831, at *10 (D. Ariz. June 24, 2013) (internal citation omitted).

Likewise, this court again declines to adopt an application of *Martinez* that would effectively expand its application to every waived trial court error in every case. The petitioner's *Lockett* and *Jackson* claims are not ineffective-assistance-at-trial claims, and *Martinez* would not apply to them, even if it warranted reconsideration of the court's judgment under Rule 60.

3. Even applying *Martinez*, the petitioner would not be entitled to relief.

To overcome default under *Martinez*, a petitioner must show that post-conviction counsel was ineffective during the "initial-review collateral proceeding," *Martinez*, 566 U.S. at 16, and that the underlying ineffective-assistance-of-trial-counsel claim is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. The plaintiff cannot satisfy those requirements for any of the three claims raised in his pending motion.

   a. Claim 10(c)

The plaintiff's allegation in Claim 10(c), that trial counsel was ineffective for failing to investigate Buddy Corbitt as an alternative suspect, was related to Claim 9(b), in which he alleged that the prosecution had withheld material exculpatory evidence that Corbitt had a motive to kill one of the victims and had threatened to do so. (Doc. No. 241-1 at 14, 17–18.) The evidence in question was that, around a year before Porter and Dotson were murdered, Corbitt had paid $1,700 for Porter's murder to Joe Langford, who took the money and "laughed it off." (Doc. No. 183 at 97.) In its 2006 ruling, the court agreed that the prosecution had suppressed facially favorable evidence about Corbitt's potential involvement but found the evidence was not material, in light of the overwhelming evidence against the petitioner.[2] (Doc. No. 183 at 44.)

In connection with its ruling on Claim 9(b), the court addressed the petitioner's

---

[2] That evidence included: an arranged drug deal between the petitioner and the victims to take place on April 23, 1983; the victims' possession of a bag of cash on the afternoon of April 23, and their disappearance sometime after 4:30 that day; the petitioner's walking into the woods on April 23, after being overheard telling one of the victims that he would meet him at 6 p.m.; gunshots heard later that day from the area where the petitioner had walked into the woods; the discovery of the victims' bodies in a wooded area approximately two weeks later, with gunshot wounds in the chest and abdomen and their throats cut; the discovery near the bodies of the petitioner's knife scabbard, a case for the type of glasses he wore, and a .308 cartridge that ballistic tests showed had been fired from the petitioner's rifle; the petitioner's arrival in Ohio after the victims' disappearance, driving a victim's truck, and in possession of a victim's gun, both victims' coveralls, and large sums of cash. *State v. Zagorski*, 701 S.W.2d 808, at 810–11 (Tenn. 1985).

alternative argument that, if the court found no violation of *Brady v. Maryland*, 373 U.S. 83 (1963), in the suppression of the documents, then trial counsel were ineffective for failing to discover and present the exculpatory evidence. (Doc. No. 183 at 98.) The court first found that any such claim was procedurally defaulted, because the evidence was in the prosecutor's file that had been turned over to post-conviction counsel, so there was no external cause for the default.[3] (*Id.* at 98–99.) But it went on to reject the petitioner's argument in an alternative analysis of its merits:

> Assuming for the sake of argument that defense counsels' representation was deficient for not being more aggressive in investigating and presenting exculpatory evidence, because Zagorski has failed to show that he is entitled to relief under *Brady*, he cannot establish that he was prejudiced by defense counsels' failure to research and present the evidence that forms the basis of Zagorski's *Brady* claim. In other words, Zagorski has not shown that, but for the evidence being unavailable, there exists a reasonable probability that the results of the trial would have been different. Because Zagorski has not satisfied both halves of the two-part *Strickland* [*v. Washington*, 466 U.S. 668, 693–94 (1984),] test . . . he has not shown that defense counsel provided ineffective assistance.

(Doc. No. 183 at 99.)

Accordingly, when the court reached the petitioner's related ineffective-assistance claim, Claim 10(c), it found that it was not only procedurally defaulted but also without merit for the reasons already explained in ruling on the other claim. (*Id.* at 101–02.) In effect, the court found that, because the Corbitt information that might have been discovered by a more thorough

---

[3] In fact, post-conviction counsel asserted in the Amended Petition for Post-Conviction Relief that "[c]ounsel failed to fully investigate and present all available evidence that would support Petitioner's claims of innocence regarding the First Degree Murder charges." (Doc. No. 9, Addendum 3, Post-Conviction technical record at 11.) That claim was not raised on post-conviction appeal. (*See* Doc. No. 183 at 98.) To the extent that the post-conviction claim encompassed the failure to discover and present the exculpatory Corbitt evidence, the fact that *Martinez* does not apply to claims that were raised in a post-conviction petition but defaulted on post-conviction appeal is yet another reason that Claim 10(c) does not merit relief under Rule 60. *See West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (explaining that *Martinez* does not apply in those circumstances because defaults on appeal cannot be attributed to ineffectiveness during the initial-review post-conviction proceeding).

investigation by counsel would not have been reasonably likely to affect the outcome of the case, the petitioner could not satisfy the prejudice prong required to prevail on a claim of ineffective assistance under *Strickland*. That alternative rejection of Claim 10(c) on the merits dictates that the claim is not sufficiently substantial to warrant further consideration under *Martinez*.[4]

    b.  Claim 15

The petitioner's claim regarding the trial court's instructions to the jury about mitigating factors is also not a substantial claim for *Martinez* purposes. The trial court instructed the jury that "mitigating circumstances may be established by any amount of proof and are not required to be proven beyond a reasonable doubt or even by a preponderance of the evidence." (Doc. No. 9, Addendum 1, Tr. 1127.) Just four minutes after beginning its deliberations, the jury returned to court, where the following exchange took place:

> THE FOREMAN: Your Honor, we were wondering if it would be possible that we get a good definition, explanation, of what would constitute a mitigating circumstance?
>
> THE COURT: Mitigating circumstances are within your province, if there are any. You have heard the evidence of the case, and no additional evidence was produced at the sentence hearing, so ***you may consider all of the evidence that was presented in the entire case***. The law sets out certain mitigating circumstances which have no particular applicability in this case, but you're not limited to those, so you can consider any mitigating circumstances that in your judgment would comply with the instructions given.
>
> THE FOREMAN: I think, what we're trying to get at is just what is the

---

[4] Even if the court were to reconsider the claim today, it remains convinced that, in light of the evidence against the petitioner, there is no reasonable probability that the Corbitt evidence would have changed the outcome of his trial. In addition to all of the circumstantial evidence clearly establishing the petitioner's involvement in the murders and robbery, the jury heard about the petitioner's multiple statements to law enforcement to the effect that several other individuals, whom he refused to identify, were involved. *State v. Zagorski*, 701 S.W.2d 808, 811 (Tenn. 1985). Even assuming the jurors would have connected a year-old plan to the murders, the Corbitt evidence might only have suggested the identity of one of those other individuals. There is no reasonable chance that it would have changed the balance of the evidence in the petitioner's favor.

| | meaning of the word mitigating? |
|---|---|
| THE COURT: | Mitigating would mean any circumstance which would have a ***tendency to lessen the aggravation***, which would have any tendency to – (Pause) – ***give a reason for the act***. I cannot think of a better definition right now, except that it's opposed to aggravating and would have a tendency to lessen or tend – not "to," necessarily, but ***tend to justify, and to take away any of the aggravation of the circumstance***. |

(Doc. No. 241-2 at 2–3) (emphasis added). The jury returned two hours later, and the foreman announced that they had unanimously found two aggravating circumstances: (1) the murders were especially heinous, atrocious, or cruel in that they involved torture or depravity of mind (HAC aggravator); and (2) the murders were committed while the petitioner was engaged in robbing the victims. (Doc. No. 9, Addendum 1, Tr. 1133.) They also unanimously found that there were no mitigating circumstances sufficiently substantial to outweigh the aggravating circumstances they had found and, consequently, determined "that the punishment shall be death." (*Id.*)

The petitioner asserts that the judge's final statement had the effect of preventing the jurors from considering mitigation evidence that did not tend to justify the murders, in violation of *Lockett v. Ohio*, 438 U.S. 586 (1978.) *Lockett* provides that jurors must be allowed to consider as mitigation "any aspect of a defendant's character or record and any of the circumstances of the offense." *Id.* at 604. Thus, it is true that a capital defendant is not required to establish that a fact bears some causal "nexus to the crime" in order for the jury to consider it as mitigation. *Tennard v. Dretke*, 542 U.S. 274, 287 (2004). But even if the trial court's off-the-cuff instruction ran afoul of that rule, for the petitioner to prevail on the basis of an erroneous jury instruction, he would have to establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141,

147 (1973), or that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). A "substantial and injurious effect" exists when there is "grave doubt" about the effect of an error on the verdict. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

As the trial court observed in the quotation above, the petitioner did not present any evidence during his sentencing hearing. In fact, he had "unequivocally informed counsel that if convicted, he preferred death instead of a possible sentence of life in prison. . . . [H]e prohibited his attorneys from having any contact with his family or delving into his past. He further instructed counsel that no mitigating evidence was to be presented at the sentencing phase of trial." *Zagorski v. State*, 983 S.W.2d 654, 656 (Tenn. 1998). The petitioner remained "adamant" in discussions with his attorneys throughout the trial that he did not want to present any mitigation. *Id.* At one point, the petitioner offered to confess to the murders if he could choose the time and method of his execution. (*See* Doc. No. 183 at 15.) When the jury returned from sentencing deliberations with a verdict of death, he thanked them. (Doc. No. 9, Addendum 1, Tr. 1133.)

Nevertheless, the petitioner now offers three facts known to the jury from the guilt phase of the trial that he asserts the jury might have considered mitigating, but for the court's faulty instruction: (1) the victims were involved in illegal drug dealing; (2) the victims were highly intoxicated at the time of their deaths; and (3) the victims were carrying a gun. (Doc. No. 241 at 6.) The petitioner does not explain how those facts are mitigating or cite any caselaw suggesting that they are. To the extent that they bore any causal relationship to the commission of the crime or had any tendency to make the murders less cruel or torturous, they fit squarely within the factors the court instructed the jurors they could consider as mitigation in the portions of its

instructions emphasized above. The faulty instruction, accordingly, did not preclude the jurors' consideration of those facts in the context of whether they played a role in the murders or weighed against the HAC aggravator.

The only other theory under which those three facts would arguably constitute mitigation amounts to the suggestion that "a defendant is less culpable if he murders a vile person," but the petitioner does not cite any authority for the proposition that a victim's "poor character" should be considered as mitigation. *See United States v. Snarr*, 704 F.3d 368, 400 (5th Cir. 2013) (holding that lower court properly excluded evidence of murder victim's "poor character" as "irrelevant or highly prejudicial"). To the contrary, at least one federal appellate court has held that evidence offered to support such a theory is not even admissible in a capital sentencing hearing. *Id.* Accordingly, the petitioner has not established that the error in the trial court's instructions prevented the jury from considering any proper mitigation factors or otherwise impacted the verdict. Because he cannot establish any prejudice arising from the alleged error, Claim 15 is not substantial and would fail on its merits even if the petitioner were entitled to reconsideration.

    c. Claim 17

Finally, the petitioner's claim that it is unconstitutional to impose the death penalty on a defendant who previously rejected a plea deal for a life sentence has no merit. In *United States v. Jackson*, 390 U.S. 570 (1968), the case on which the petitioner bases his claim, the Supreme Court found that a federal statute that limited the potential imposition of a death sentence to only those defendants who went to trial unconstitutionally penalized defendants for exercising their right to plead not guilty and demand a jury trial. *Id.* at 582–83. The other case on which the petitioner relies, *Hynes v. Tomei*, 706 N.E.2d 1201 (N.Y. Ct. App. 1998), also involved a statute

that barred the imposition of a death sentence on defendants who pleaded guilty. *Id.* at 620.

The petitioner does not allege that Tennessee's statutory capital sentencing scheme contains any provision like the ones found unconstitutional in *Jackson* or *Hynes*. Instead, he asserts that imposing a death sentence after trial—when he was offered a life sentence to plead guilty before trial—had the same effect of unconstitutionally burdening his right to plead not guilty and demand a jury trial. (Doc. No. 241 at 7.) But the Supreme Court has rejected the notion that trading lesser consequences for a defendant's guilty plea is unconstitutional:

> [I]n the "give-and-take" of plea bargaining, there is no [ ] element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.
>
> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. . . . Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.
>
> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Bordenkircher v. Hayes*, 434 U.S. 357, 363–64 (1978) (internal citations omitted). The Court reiterated that position when it held that a system that offered a defendant the possibility of avoiding a mandatory life sentence by entering a plea was not unconstitutional:

> The cases in this Court since *Jackson* have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid. Specifically, there is no per se rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. The plea may obtain for the defendant "the possibility or certainty . . . [not only of] a

lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty . . .," but also of a lesser penalty than that required to be imposed after a guilty verdict by a jury.

. . .

The States and the Federal Government are free to abolish guilty pleas and plea bargaining; but absent such action, as the Constitution has been construed in our cases, it is not forbidden to extend a proper degree of leniency in return for guilty pleas.

*Corbitt v. New Jersey*, 439 U.S. 212, 218–20, 223 (1978) (citation omitted). Thus, where the original charges are not unwarranted, an offer of leniency in exchange for a plea does not amount to "retaliation or vindictiveness" or constitute "punish[ment] for exercising a constitutional right" against those who go to trial. *Id.* at 223; *see also Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973) ("Although every [plea bargain] has a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas.")

Accordingly, a capital system that allows for plea bargaining and imposition of a death sentence after trial is not unconstitutional:

> [T]he Supreme Court in *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978), recently held that plea-bargaining, in which the prosecutor openly presents a defendant with the unpleasant alternatives of pleading guilty to a lesser charge and foregoing trial or pleading not guilty and facing a more serious charge on which he plainly is subject to prosecution, and for which he would receive upon conviction life imprisonment, does not violate the Due Process Clause of the Fourteenth Amendment. The fact that the prosecutor's plea-bargaining tool in *Bordenkircher* was life imprisonment and in this case it allegedly is the death penalty is a distinction without a difference. *Bordenkircher* controls the instant case. Finally, it is well settled that a plea bargain is not invalid per se because it is induced by fear of receiving the death penalty or because in agreeing to the plea bargain the defendant averts the possibility of receiving the death penalty. *See, e.g., Brady v. United States*, 397 U.S. 742, 747 (1970). Thus, if Florida prosecutors actually are using the threat of the death penalty under Section 921.141 in their plea-bargaining to induce guilty pleas, the practice is permissible, and the petitioner's contention is without merit.

*Spinkellink v. Wainwright*, 578 F.2d 582, 608–09 (5th Cir. 1978) (affirming denial of habeas

relief to inmate under sentence of death) (some internal citations omitted); *see also North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) (guilty plea to second degree murder in order to avoid possible death penalty after a trial on first-degree murder not compelled under Fifth Amendment); *Parker v. North Carolina*, 397 U.S. 790 (1970) (plea not compelled merely because induced by fear of possible death penalty); *Brady v. United States*, 397 U.S. 742 (1970) ("We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); *Corcoran v. Buss*, 551 F.3d 703, 710–11 (7th Cir. 2008) (holding that prosecutor's "offer to forgo the death penalty in exchange for a bench trial" did not violate *Jackson*); *Cowans v. Bagley*, 624 F. Supp. 2d 709, 819 (S.D. Ohio 2008), aff'd, 639 F.3d 241 (6th Cir. 2011) (explaining that there is no constitutional prohibition against a system "where the defendant might plead guilty to avoid the *possibility* of a death sentence, inasmuch as there is no per se rule against encouraging guilty pleas").

The petitioner does not dispute that the crimes in this case were eligible for a death sentence under Tennessee's capital sentencing scheme. The State's offer of leniency in exchange for a guilty plea was not unconstitutional, nor did it render the petitioner's eventual sentence unconstitutional. The petitioner's *Jackson* claim thus lacks any merit even if his Rule 60 motion established a basis for its reconsideration.

### C. Equitable Factors

Finally, the petitioner asserts that "the equities underlying this habeas proceeding have now dramatically shifted" and lists six "extraordinary circumstances" that warrant reopening his

case: (1) the petitioner's life is at stake; (2) there is no valid interest in "enforcing the non-existent procedural bars" the court previously applied; (3) the merits of the petitioner's claims might never be considered unless relief is granted; (4) the petitioner's *Lockett* claim is "clearly winning," and his other claims are "significant and substantial"; (5) *Martinez* dictates that the petitioner is equitably entitled to review of his claims because of his post-conviction counsel's errors; and (6) by offering him a life sentence before trial, the state recognized that a death sentence is "not a necessary sentence." (Doc. No. 241 at 20–21, 23.)

Factors 2 and 5 are both based on *Martinez*, which does not warrant Rule 60 relief for the reasons explained above. And there has been no "dramatic[] shift," or any shift at all, in any of the petitioner's other factors. His sentence, the plea offer, and the substance of his claims are all exactly the same as they were in 2006.

Moreover, the court's alternative analyses above demonstrate that the petitioner's claims are neither "winning" nor "substantial." The court also observes that none of the claims even arguably establishes that the petitioner is actually innocent of the crimes for which he was convicted. Accordingly, none of the petitioner's proposed equitable considerations—either individually or in combination—dictates granting the relief requested.

### III. CONCLUSION

For the foregoing reasons, the petitioner has not established that he is entitled to relief. His motion will be denied.

An appropriate order shall enter.

ENTER this 12th day of September 2018.

Aleta A. Trauger
United States District Judge